[Civil No. 2611.   Filed November 14, 1927.]

[260 Pac. 1023.]

STATE, at the Relation of JOHN W. MURPHY, Attorney General et al., Interveners and Appellants, v. JOHN CULL, Plaintiff and Appellee, THOMAS D. FULGHUM et al., Intervening Plaintiffs and Appellees.

Mr. A. R. Lynch, for Appellants.

Mr. Fred Sutter and Mr. Walter Roche, for Appellees.

ROSS, C. J.—This action was brought by John Cull, a property owner and taxpayer of Cochise county, against the board of supervisors of such county, acting as a board of equalization thereof, to enjoin such county officers and the clerk of said board from extending upon the county assessment-roll certain increases of valuation of grazing lands belonging to him and other taxpayers of Cochise county similarly situated.

Thomas D. Fulghum and sixteen other taxpayers of said county were permitted to intervene, and thereupon filed a complaint alleging the same, or practically the same things as were alleged in Cull's complaint, and prayed for the same relief.

The state of Arizona, at the relation of the Attorney General, and Frank Luke, E. A. Hughes and Charles R. Howe, constituting the state tax commission and the state board of equalization of the state of Arizona, petitioned the court to be allowed to be made parties defendant in said action, and, such permission being granted, filed the following defenses: (1) They demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action; and (2) they pleaded lack of jurisdiction in the superior court to entertain the action.

The board of supervisors and its clerk made no appearance, but suffered default.

The demurrer and plea to the jurisdiction were overruled, and, the intervening defendants electing to stand thereon, judgment was entered making the temporary writ permanent, as prayed for in the complaint. The state and the tax commission and state board of equalization have appealed.

The complaints of plaintiff and the intervener plaintiffs, to both of whom we shall hereafter refer as plaintiffs, show:

That the regularly constituted authorities of Cochise county for the year 1926 had duly listed, valued, and equalized the property in said county (excepting such property as the law provides shall be assessed and equalized by the state tax commission and state board of equalization), including grazing and dry farming lands; that said lands were so assessed and equalized at $2 per acre; that said board of supervisors, acting as a board of equalization, within the time and manner provided by law, duly made out and certified and forwarded an abstract of the assessment-roll of the county to the state board of equalization. That the state tax commission, acting as a board of equalization, on August 9th, 1926, made and transmitted to the defendants, board of supervisors, and clerk, the following order:

"In accordance with the provisions of paragraph 4835, title 49, Revised Statutes of Arizona 1913, Civil Code, you are hereby advised of the changes which have been made in the assessment of your county for the year 1926 by the state board of equalization, and you are ordered to enter them accordingly upon your rolls. Such changes are as follows, to wit:

"Increase 800,000 acres of grazing land from $2 to $3 per acre, thereby making a net increase of $800,000."

That the board of supervisors of said county neglected and failed to make the extensions as directed in said order, and that on August 28th the state tax commission, in an order to the board of supervisors, directed them to reconvene and make such extensions, and in said order explained more definitely what grazing lands were meant to be included in the order of August 9th, as follows:

"It having been brought to the attention of the commission that the assessor of Cochise county now contends that he did not reduce as much as 800,000 acres of grazing and dry farming land from $3 to $2, which is the land upon which an increase of $1 per acre has been ordered, you are advised that the order made upon August 9th, 1926, was intended to apply only to such dry farming and grazing land as was reduced $1 per acre, and is modified accordingly."

That the county board of equalization is threatening to comply with the order of the state tax commission and state board of equalization, and will do so unless enjoined. That the order of August 9th is indefinite and uncertain, and the land on which the valuation is directed to be raised is not described, and that by said order it is left to the discretion of the board of supervisors to select and designate the land on which said raise should be made, and that the order of August 28th is void, for the reasons that the state tax commission and state board of equalization had no authority to modify or alter the order of August 9th or to make any order changing or raising the valuation of said grazing lands after the second Monday of August, 1926. That the eighteen plaintiffs are owners of 200,000 acres of the grazing lands about to be raised from $2 to $3, and that there are a large number of other owners (estimated at 232) of grazing lands in Cochise county similarly situated. That, if the board of supervisors comply with the order, it will cast a cloud upon plaintiffs' title, and necessitate a multiplicity of suits, in that each and every of the plaintiffs, and other land owners similarly situated, would be compelled to bring suit to remove the cloud and recover the illegal increase.

Many other allegations attacking the assessment upon the grounds of illegality and fraud are contained in the complaint, but such allegations are

omitted, because we do not find it necessary in disposing of the case to consider them.

An offer to pay taxes upon a valuation of $2 per acre is contained in the complaint, as also the usual allegations of irreparable loss and damage and the inadequacy of a suit at law.

The defendants (appellants here) claim that the court erred in overruling their demurrer. In considering this proposition we must, under the rules of pleading, regard all material allegations of the complaint as admitted. The plaintiffs (appellees here) contended below, and contend here, that the order of August 9th was so indefinite and uncertain as to the lands it was intended to cover as not to afford the officers to whom it was directed the necessary information upon which to act, and that the later order of August 28th failed to clarify the first, and besides, if intended as an equalizing order, was unauthorized by law.

That an order by the state board of equalization directing an increase of valuation on property appearing on the county's equalized assessment-roll should so definitely and certainly describe the property to be raised as to leave nothing for the local board to do except the ministerial act of making the extension seems too obvious to need discussion. If the order to the local board leaves it to such board to select the lands to be raised from a larger acreage of lands of the same kind and description, it undertakes to invest the local board with a discretion as to what lands shall be increased, and makes such board the final equalizer of the taxpayer's land so increased. This power is not conferred on the county board of equalization. Such board cannot select the lands to be increased from a larger acreage of the same kind and description, and, if the order to such board undertakes to confer that power, it is void for uncertainty, and any attempted raise in pursu-

ance thereof would be without and beyond the jurisdiction of the county board.

The order directing the increase must itself, or in itself, aided by the records possessed by the local board, furnish a description of the land intended to be increased sufficient to identify such lands, and leave nothing to the local board to do, except the ministerial act of making the necessary extensions, and confer on them no discretion in selecting the lands to be increased.

It is at once apparent that an order to the county board of equalization to "increase 800,000 acres of grazing land from $2 to $3" does not in itself furnish the necessary information to the local board. If the record showed that 800,000 acres were all of the grazing lands in Cochise county, it would be sufficient; it would then have the force of directing an increase of all the grazing lands in the county. Or, if the grazing lands of the county were classified for the purposes of taxation into classes, as A, B and C, and the order covered one of such classes, it would be certain.

The supplemental order of August 28th made by the state tax commission was not an equalizing order, for two reasons: (1) It was not made by the equalizing board; and (2) it was made after the date when the state board of equalization is authorized to act in that capacity, and after they had transmitted to the board of supervisors of Cochise county a statement of the changes in the assessment-roll of that county for the year 1926. Under the statute (par. 4834, Civ. Code 1913) such board is authorized to meet on the first Monday of August of each year and continue in session from day to day until the business before it is disposed of. But paragraph 4835, Id., provides that any changes in the assessment of a county shall be transmitted to the board of supervisors on or before the second Monday of August.

The order of August 28th was not an equalizing order, and evidently was not intended as such. It shows on its face that it was simply explanatory. However, it undertakes to cover "dry farming lands" as well as grazing lands, aggregating the same number of acres as in the order of August 9th, and describes such lands as being "such dry farming and grazing land as was reduced (by the county assessor) $1 per acre." If the order of August 28th be looked to to supply evidence of the lands intended to be covered by the order of August 9th, it would still lack definiteness and certainty. The allegations of the complaint are that such lands were assessed and equalized by the county officers at $2 per acre. The assessment as made by the assessor was neither reduced nor increased by the county board of equalization, and the assessor had no power to reduce an assessment made by him. If it was intended to designate dry farming and grazing lands that had been assessed in some previous year at $3, but listed in 1926 at $2 per acre, it was indefinite in failing to so state. In ascertaining the lands to be increased, what assessment roll would the county board of equalization look to 1925 or 1924, or some earlier year?

" . . . Reports of tax commissioners and other public officers, printed under public authority, are judicially noticed." *Bunten* v. *Rock Springs Grazing Assn.*, 29 Wyo. 461, 489, 215 Pac. 244, 253.

As a matter of fact, the published annual reports of the proceedings of the state board of equalization show for the year 1925 1,275,797 acres of dry farming and grazing lands in Cochise county, and under the order it was from this large acreage that the board of supervisors was left to choose 800,000 acres of "grazing land" according to the order of August 9th and "dry farming and grazing lands" according to the supplemental order of August 28th.

The powers of the county board of equalization being limited to the ministerial act of making the extensions, and the order addressed to them being impossible of execution without the local board exercising a discretion as to the lands to be increased, we are convinced that the county board of equalization, in failing and neglecting to make the extension ordered, did the only thing they could legally do, and that the order of the trial court overruling the demurrer to the complaint was correct.

Notwithstanding, it is the contention of defendants that the plaintiffs are not entitled to test the validity or sufficiency of said order in an equitable action to enjoin its execution. It is insisted that the taxpayer should first pay the tax, including the increased valuation, and thereafter bring his action to recover that portion thereof objected to as illegal. This contention is based upon paragraph 4939, Civil Code, reading as follows:

"No person, company, firm, partnership, association, corporation, bank, or public utility, upon which a tax shall have been imposed under any provision of law relating to taxation of real or personal property shall be permitted for any reason to test the validity thereof, either as plaintiff or defendant, unless the amount of such taxes shall first have been paid to the county treasurer, whose duty it is to collect the same, together with all penalties thereon as in the case of other taxes. And no injunction shall ever issue in any suit, action, or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of law; but after payment, action may be maintained to recover any tax illegally collected, in such manner and at such time as may now or hereafter be provided by law. In case the amount of the taxes due shall be finally determined to be less than the amount so paid, the excess shall be refunded in the manner provided in sec. 49 of this act. (Paragraph 4887.)"

This provision is found in the revenue statutes under the heading "Collection of Delinquent Taxes," and by its terms we think its prohibition is against court proceedings of any kind to collect taxes after they have been levied. This is evident, not only from the heading under which it is found, but from its context. It is limited to actions brought after the tax-roll has been delivered to the county treasurer, who, under the law, is *ex-officio* tax collector. It does not forbid the bringing of suits against the taxing and equalizing officers to test the validity of their action in the process of listing and valuing property for taxation, but does provide that, if, after that process is completed, and the tax-roll made up and placed with the tax collector, the taxpayer wants to test its validity, he must pay all taxes, etc. *Yuma County* v. *Arizona & S. R. Co.*, 30 Ariz. 27, 243 Pac. 907. There is a wide distinction between the act of listing and valuing property for taxing purposes and the act of collecting the taxes.

In *Briscoe* v. *McMillan*, 117 Tenn. 115, 100 S. W. 111, it was contended that a statute very much like ours forbade the taxpayer's instituting or maintaining an injunction action against the state equalization board to prevent it from exercising jurisdiction in an assessment matter. The court in passing on the point said:

"We are of opinion the sections of the Code invoked herein are inapplicable in the present case. The statute in question by its express provisions only applies to the collection of taxes. There is no effort here to prevent the collection of taxes, but the object of the bill is to enjoin the state board of equalization against the alleged illegal exercise of its jurisdiction in the assessment of said county and municipal taxes."

In *State* v. *Cromer*, 35 S. C. 213, 14 S. E. 493, under a statute similar to ours, the court granted a *mandamus* to correct an assessment, and held that

the statute did not prohibit the courts from exercising proper control over officers charged with the listing and assessment of property for the purpose of taxation when proceeding contrary to law.

It is also contended by defendants that this proceeding is a collateral attack upon the judgment of the state board of equalization, and that, since said board in ordering the plaintiffs' property increased was acting in a *quasi*-judicial capacity, its judgment was not vulnerable to such an attack. That would, doubtless be true if the order of the board were not absolutely void for want of certainty of description of the property attempted to be increased. The order on its face shows that it is incapable of fulfillment, unless the officers to whom it is addressed select out of the large acreage of dry farming and grazing lands shown to be in Cochise county 800,000 acres, and put thereon the ordered increase, and thereby make the act of increase theirs instead of the State Board of Equalization's. An order void for want of jurisdiction by the body making it, or an order incapable of execution on account of its uncertainty, we think may be attacked collaterally. This is the universal rule.

We are satisfied the facts bring this case within the class of cases where equitable relief should be granted. The taxpayers no doubt could have abided the time when the tax collector was proceeding to collect the taxes, and, under paragraph 4939, *supra,* paid such taxes and penalties to the county treasurer and sued to recover the illegal part thereof, but to do that would have necessitated as many suits as there were taxpayers affected, some 250, entailing costs, loss of interest, and the expense of litigation, besides unnecessarily burdening the courts.

We are not unmindful that the courts will not enjoin an assessment or collection of taxes except for the most cogent reasons, and we share that

disposition. In Cooley on "The Law of Taxation" (4th ed.), § 1659, it is said:

"An injunction against the assessment of a tax is to be distinguished from an injunction against the collection of a tax. Ordinarily an injunction will not be granted to restrain an assessment, especially in case of mere irregularities, or where there is a plain and adequate remedy at law by appeal, *certiorari*, or other proceedings; but the writ may be granted in some cases where the assessment is under an unconstitutional statute, or on unconstitutional principles, or the property to be assessed is exempt, or the assessment would for other reasons be clearly unwarranted. Likewise the writ will be granted where necessary to prevent a multiplicity of suits, or to prevent irreparable injury to complainant, or to prevent a cloud on the title, where there is no adequate remedy at law."

Here we find the order directing the board of supervisors to increase plaintiffs' lands is void for uncertainty. If it should be carried out, and the increase made notwithstanding, some 250 taxpayers would be affected by it. The wrong can now be remedied in this one suit. If, however, it be held that such defect cannot be raised by injunction, then every taxpayer will be relegated to a court of law for redress. It seems to us that this would impose unnecessary and unreasonable hardship. Under the peculiar circumstances, we think the right to injunctive relief can and should be upheld upon the equitable consideration of preventing a multiplicity of suits.

Although many other questions, asserting the invalidity of the assessment here attacked, are presented by the complaint, we do not, in view of the invalidity of the order of the state board of equalization, find it necessary to consider them.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.