Bernard S. Meyer, J.
By this application, petitioner seeks to have the members of the County Board of Assessors held in contempt for failure to comply with the order, made on consent in this article 78 (Civ. Prac. Act) proceeding, requiring the board “ pursuant to section 603 of the County Government Law of Nassau County to adopt such rules and regulations for the guidance of deputy assessors in the performance of their duties as will establish an equitable and scientific system of assessing property for taxation and * * * to publish such rules and make them available to any taxpayer of the County upon application therefore to the Board of Assessors.” Rules and regulations were adopted by the board, which petitioner contends are wholly insufficient to meet the requirements of the order and of the statute referred to In the order. Respondents acknowledge that they may be held in contempt for failure to comply with an order of court, but contend that (1) the court may not substitute its judgment for that of the board since adoption of the *318 rules and regulations involves the exercise of discretion, and (2) that in any event, petitioner is not prejudiced because he has another remedy and because he refers in Ms affidavit on tMs motion to “valuations placed upon the property of my corporation.’ ’
Section 603 of the County Government Law, to which the order refers, provides, in pertinent part, as follows (L. 1936, ch. 879, as amd. by L. 1946, ch. 708): “It shall be the duty of the board of assessors to adopt such rules and regulations for the guidance of its deputy assessors in the performance of their duties as will establish an equitable and scientific system of assessing property for taxation. Such system shall provide for recording separately the value of each parcel of land and the value of any building or structure thereon. It shall be the duty of the board of assessors to prepare and maintain tax maps and land value maps which shall be completed as promptly as possible and in no event later than three years from the effective date of this act. The expense of preparing and acquiring such maps shall be a county charge and the board of supervisors may raise the necessary funds required for such purposes in whole or in part by the issuance of the bonds of the county therefor. The tax maps shall show the dimensions of each separately assessed parcel of land within the county, and the land value maps shall show the value per foot, according to a standard unit of depth, of all lots abutting on any street, highway or other public way or place in the county; but as to acreage tracts the land value maps shall show the value per acre. Upon the completion of such tax maps and the land value maps, the board of assessors shall, and at any time prior thereto, may further adopt rules for the determination of: (1) the value of property not of the standard unit of depth shown on the land value maps; (2) the effect of side street influence on the value of property located at intersections; (3) the value of property of odd shapes and sizes; and (4) the value of buildings and structures which shall include the factors of cost of construction on some unit basis for each type of construction based on either area or content, depreciation, obsolescene, and market value. The rules so adopted, and all amendments thereof, shall be published and made available to any taxpayer of the county upon application to the board of assessors.”
Any regulations issued by the board must, therefore, conform to both the general requirement that they constitute ‘6 an equitable and scientific system ’5 and the specific mandates of the statute that (1) the system provide for separate valuation of the land and any structure on the land, (2) land be valued per *319 foot on the basis of a standard unit of depth or by the acre, (3) the value of property not of the standard unit of depth be provided for, (4) the effect of side street influence on the value of property located at intersections be provided for, (5) the value of property of odd shapes and sizes be provided for, (6) the value of structures include factors for cost of construction, depreciation, obsolescence and market value, (7) the cost of construction factor differentiate between types of construction and use either area or content as its unit, (8) the rules and any amendments be published and made available to any taxpayer of the county. Under most statutes relating to assessment, ££ The test is not the formula used but the fairness and reasonableness of the board’s conclusion. The result, not the method, is controlling. ’ ’ (Matter of Bell Aircraft Corp. v. Board of Assessors of City of Buffalo; 204 Misc. 951, 953; see, also, 84 C. J. S., Taxation, §§ 54, 410, pp. 152, 780 et seq.) The evident purpose of the Legislature in providing in section 603 that Nassau assessments must conform to the general and specific criteria noted above was to make formula or method controlling within the limits of those criteria; its purpose in requiring that regulations incorporating those criteria be published and made available to any taxpayer of the county was to make clear that the regulations are not just office guides but governing rules, having the force and effect of law, and against which the taxpayer can measure the propriety of the assessment of his property. Adoption of regulations under the statute is, however, an act of discretion on the part of the board which this court may not disturb unless it can be said either that the regulations adopted are arbitrary and capricious or that they do not conform to the express requirements of the statute. It is not necessary to consider the first alternative since the regulations adopted clearly do not conform to the criteria above set forth.
The regulations are divided into headings entitled 6 6 Buildings,” “ Land,” ££ Tables and Formulae,” “ Land Value Map,” ££ Charges of Assessment,” ££ Land and Tax Map,” £i Property Development Maps,” “ Apportionments,” and 1£ Forms, Specifications, Charts, Tables, Formulae.” Only the first three and the last have bearing on the question at issue. The ££Buildings ” section requires a physical inspection, the determination of the grade of residential buildings £ £ in accordance with approved Grade specifications, AA, A, BB, B and O,” notation of variations from specifications, pricing 11 using appropriate price charts ” and the inspection of mansion type residences and commercial and industrial buildings and the listing of their *320 horizontal and vertical components which, together with “ miscellaneous special features ’ ’ are to be computed ‘ ‘ in accordance with appropriate price charts.” The “Land” section directs the Land Deputy to recommend land assessments to the board, to keep current on zoning, to ‘1 keep informed of current sales, ’ ’ to observe changes in the character of areas, to compare assessments of similar properties to maintain uniformity and equality, to recommend changes when in his judgment changes are indicated, to “ price residential plots generally on a front foot basis, excepting plots zoned for one acre or more ” xvhich are to be assessed on an acreage basis, and except that “ Very irregular plots will generally be priced on a square foot basis,” to assess business and industrial plots on a front foot basis, shopping centers on an acreage basis, except for land under buildings which is to be priced on a square foot basis, and to ‘ ‘ price large parcels generally on an acreage basis, except large industrial plots and large plots used for parking fields (excluding regional shopping centers) ” which “ will be assessed on a square foot basis. ’ ’ The ‘2 Tables and Formulae ’ ’ section directs Land Pricers to use tables and' formulas adopted by the board to compute assessments of plots more or less than 100 feet, corner influence and odd shaped lots. The “Forms, Specifications, Charts, Tables, Formulae” section states that, “All forms, specifications, charts, tables and formulae mentioned in the foregoing rules and regulations have been adopted by the Board and are on file ” and “ are available to taxpayers for examination at the Office of the Assessment Department.” The board has not submitted the specifications, charts, tables and formulae referred to as part of its return in this proceeding. The affidavit of the chairman of the board states that they are not set forth verbatim in the regulations because of their length and number.
The regulations do not satisfy the specific criteria set forth above in that the ‘1 Buildings ’ ’ section makes no reference whatsoever to “market value ” as a factor in valuing buildings (current sales are referred to only in the “ Lands ” section and then without any indication of the effect to be given such sales) and gives no consideration to the factors of depreciation and obsolescence.
Further, the regulations require valuation of mansion type residences and commercial and industrial buildings on the basis of their “vertical and horizontal components” and “miscellaneous special features.” In the absence of a definition of those terms in the regulations, there would appear to be a conflict between the regulations and the statutory direction that the cost of construction of buildings and structures be deter *321 mined by a unit “ based on either area or content.” Valuation of a component or feature may conceivably be on an area or content basis, but nothing in the regulations as they now stand so requires. Since the statute uses the word “include,” the component method may be incorporated in the regulation together with either the area or the content method, or both, but the statutory mandate may not be simply ignored.
The foregoing is all that need be said on the board’s first contention. Since, however, the board will be required to revise its regulations to remedy the deficiencies above referred to, some observations with respect to the requirement that the regulations establish “ an equitable and scientific system of assessing property ” are appropriate. The dictionary definitions of the words “equitable” (“just, fair and right”), “scientific” (“conducted or systemized after the manner of science or according to results of investigation by science ”) and “ system ” (“an organized or methodically arranged set of ideas ”) suggest the limits of this requirement. As was said by the Supreme Court of Arizona in Oglesby v. Chandler (37 Ariz. 1, 12, 15) in construing a statute requiring “ a scientific survey of all taxable property “So long as its final determination is based upon some systematized rule or scientific principle of classification and made in a reasonable manner, it is sufficient. More than this is not required. Less is not sufficient. ’ ’
In their present form, the regulations refer to specifications, tables, charts and formulae not a part of the regulations themselves. That the regulations are “ published ” when they are made public (see 73 C. J. S., Publish, p. 1250) and that the statute does not require that they be made available to the public in any particular form will not save the regulations, however, if there does not emerge from them and from the specifications, charts, tables and formulas to which they refer some principle of classification. Complete articulation, though desirable, is not an absolute, but the skeletal outline of a principle there must be. It is not sufficient that, as the chairman’s affidavit states, a taxpayer “ need only come to the office of the Department of Assessment where he will be shown any and all records of his assessment and the assessment procedures will be fully explained; ” behind the explanation must be an equitable and scientific system established by regulation. Thus, while the board is correct in arguing that the regulations need not explain why 1938 construction costs are used, the fact that they are used must somewhere appear in the regulations or pricing charts to which the regulations refer. Further, the terms in which the regulations are drawn must be sufficiently definite for it to *322 appear that the distinctions made hy them are equitable. Thus, fee relationship, if any, between the factor used for '“ very irregular” .residential plots -and the -table for “ odd shaped lets ’’ which -apparently is to to be -used for -valuation .of -residential as well as commercial and -industrial land is -nowhere explained. A distinction between -aver-y irregular” plot and an “ odd -■shaped ’-’ plot would appear to be too -amorphous to be -considered equitable.
There -remains -the question whether the court should exercise its contempt power. -Section 1303 of the -Civil Practice Act provides that ■“ The final order [in an article "78 proceeding] anay "he enforced 'by proceedings for ¡contempt with respect to such -parts thereof .as grant the primary relief sought 'by petitioner.-'” 'The hoard suggests that notwithstanding '-this clear grant -of power "to the court "to enforce -its own mandate, the power should not be-exercised if another remedy Is ¡available to petitioner. Neither reason nor the history, of article'78-sustain the contention. ’Mandamus is a discretionary remedy, granted only when a clear fight exists, and will -generally be -refused Where -another adequate remedy exists ;(22 € armo dy-lYait, New York Practice, p. 190, § 87). Once discretion has been exercised and the -final order -issued, however, the 'existence -of the alternate remedy is-ofuo moment. The Judicial Council Report on the bill which became article 78 -confirms this view, 'for it noted ‘(Third Annual Report of N. Y. .Judicial 'Council, 1937, p. t>5) that prior to 1987 it had been 'required that respondent file a return-with-the-court showing compliance with its order and that this would no -longer be neoes'sa-ry in vie-w of the insertion in present section 1303 -of the contempt provision quoted above.
If the problem is considered apart from the wording cf article 78, simply .as one -of civil -contempt under section 753 of the Judiciary Law, the an-swer is no -different. 'The Judiciary •Law by the provision of -section 773 that “ The payment and acceptance of -such a -fine constitute a bar to -an -action ¡by the aggrieved party, to recover damages for -the -loss or injury ” -specifically -recognizes that a fine for civil contempt may he imposed, despite the fact that an alternate remedy exists. The -ease law is in accord. (See 21 Garmody-Wait, New York Practice, p. -257, § 107.)
The hoard further argues that petitioner has shown -no prejudice. It is 'argued that, -since his affidavit on this motion ■refers to “ valuations placed upon the -property .of my corporation,'” -there is at most prejudice to the -corporation and not to the petitioner. The papers in the original proceeding -show, *323 however, that petitioner is also the individual owner of peal estate opposite the corporate premises and of his own residence, and thus is himself an individual taxpayer. In any event, the board’s consent to the entry of the order of July 22, 1959 and its failure in the original proceeding to raise any question concerning petitioner’s right to maintain this proceeding for closes its being raised at this time. (People ex rel. Garbutt v. Rochester & State Line R. R. Co., 76 N. Y. 294; People ex rel. Pierce v. Guggenheim, 44 App. Div. 399.)
By the order of July 22, 1959 petitioner’s remedy for the violation of the rights granted him as a taxpayer by section 693 were fixed. That remedy and petitioner’s underlying statutory rights will he defeated, impaired, impeded and prejudiced unless regulations conforming to the statutory mandate are adopted. Section 1303 of the Civil Practice Act and section 753 of the Judiciary Law authorize enforcement of the order by contempt proceedings. The regulations as adopted do not comply with either the statute or the order. Petitioner is, therefore, entitled to an order holding the board in contempt. While the court is authorized under section 773 of the Judiciary Law to impose a fine even though “ an actual loss or injury ” to petitioner has not been shown, the court, in the exercise of discretion, will simply award costs and allow the board an additional 45 days from the date of' the order to be entered hereon in which to purge its contempt by revising the regulations. Settle order on notice.