297 P.2d 344

**E. T. "Eddie" WILLIAMS, Jr., as Treasurer of the State of Arizona, Appellant and Cross-Appellee,**

v.

**BANKERS NATIONAL INSURANCE COMPANY, a corporation, Commercial Life Insurance Company, a corporation, National Life and Casualty Insurance Company, a corporation, Trans-Pacific Insurance Company, a corporation, United Security Life, a corporation, Appellees,**
and
**Sun Life Insurance Company, a corporation, Cross-Appellant.**

No. 6109.

Supreme Court of Arizona.

May 15, 1956.

Robert Morrison, Atty. Gen., D. Kelly Turner, Asst. Atty. Gen., for appellant.

Lewis, Roca, Scoville & Beauchamp, by John P. Frank, Phoenix, for appellees and cross-appellant.

PHELPS, Justice.

This is an appeal by "Eddie" Williams, Jr., treasurer of the state of Arizona, from an order granting summary judgment in Count I of plaintiffs' complaint in favor of plaintiffs, Bankers National Insurance Company, Commercial Life Insurance Company, National Life and Casualty Insurance Company, Trans-Pacific Insurance Company, and United Security Life, and from an order on cross-appeal dismissing Count II of the complaint and denying motion for summary judgment in favor of Sun Life Insurance Company as cross-appellant against "Eddie" Williams, Jr., treasurer of the state of Arizona, cross-appellee.

This case arises out of the adoption of a new insurance code by the state of Arizona in 1954 to become effective January 1, 1955, A.R.S. § 20–101 et seq. Under the old code provisions, section 61–301 et seq., 1952 Supp., A.C.A.1939, the insurance laws were administered as follows:

"(a) The corporation commission shall administer the laws relating to insurance companies, and shall promulgate rules and regulations for the effective execution of such laws and the protection of the insuring public.

"(b) The commission shall have the sole power to issue certificates of incorporation, certificates of authority and licenses to corporations and organizations to do insurance business, and to impose fines and other penalties as provided in this chapter.

"(c) The commission shall provide all necessary books and blanks for the administration of the insurance laws, compile such laws in pamphlet form for the use of interested persons, and take all measures required for the administration of the insurance division."

The director of insurance was provided for, but he acted under the supervision of the corporation commission.

In 1954 the old insurance code was repealed and a new one adopted. Under the new code the director is appointed by the corporation commission subject to approval by the senate but he now acts as exclusive head of the department of insurance and is delegated the following duties, section 61–1403, 1954 Supp., A.C.A.1939 [A.R.S. § 20–142]:

"(a) The director shall enforce the provisions of this code, and shall execute the duties imposed upon him by this code.

"(b) The director shall have powers and authority expressly conferred upon him by or reasonably implied from the provisions of this code.

"(c) The director may conduct such examinations and investigations of insurance matters, in addition to examinations and investigations expressly authorized, as he may deem proper to determine whether any person has violated any provision of this code or to secure information useful in the lawful administration of any such provision. The cost of such additional examinations and investigations shall be borne by the state."

By section 61–1404, 1954 Supp., A.C.A. 1939 [A.R.S. § 20–143], he is granted the power to make necessary rules and regulations for effectuating any provision of the insurance code. In effect, the obvious intent of the legislature in the passage of this new insurance code was the creation of a distinct department of insurance, the function of which is that of an administrative body to control the administration of insurance matters as they relate to the state.

The tax provisions relating to insurance were also revised in the new code provisions. Insofar as they relate to this case, they are as follows, section 61–1524, 1954 Supp., A.C.A.1939 [A.R.S. § 20–224]:

"(a) Each authorized insurer, and each formerly authorized insurer referred to in subsection (c) of section 6 (§ 61–1506) of this article, shall file with the director, on or before March 31 each year, a report in form as prescribed by the director showing total direct premium income including policy membership and other fees and all other considerations for insurance from all classes of business whether designated as a premium or otherwise received by it during the preceding calendar year on. account of policies and contracts covering property, subjects, or risks located, resident, or to be performed in Arizona, after deducting from such total direct premium income applicable cancellations, returned premiums, the amount of reduction in or refund of premiums allowed to industrial life policyholders for payment of premiums direct to an office of the insurer, all policy dividends, refunds, savings coupons and other similar returns paid or credited to policyholders within this state and not reapplied as premiums for new, additional or extended insurance. No deduction shall be made of the cash surrender values of policies or contracts. Considerations received on annuity contracts, as well as the unabsorbed portion of any premium deposit, shall not be included in total direct premium income, and neither shall be subject to tax.

"(b) Coincident with the filing of such tax report each such foreign or alien insurer shall pay to the state

.treasurer, through the director, a tax of two per cent (2%) of such net premiums, and each domestic insurer shall so pay a tax of one per cent (1%) of such net premiums."

Failure to pay this tax has the following result, section 61–1525, 1954 Supp., A.C.A. 1939 [A.R.S. § 20–225]:

"(a) Any insurer failing for thirty (30) days after any March 31 to pay the premium tax prescribed by section 24 (§ 61–1524) of this article shall be liable to a fine of $25 for each additional day of delinquency.

"(b) The director may refuse to renew the certificate of authority of any insurer failing to pay such tax on or before the date it is due. The director shall revoke the certificate of authority of any insurer failing to pay such tax for more than thirty (30) days after it was due."

Should the amount of the tax assessed or the applicability of these sections be desired to be questioned the aggrieved person is provided with redress machinery under the provisions of section 61–1420, 1954 Supp., A.C.A.1939 [A.R.S. § 20–161], as follows:

"The director may hold hearings for any purpose deemed by him to be necessary and within the scope of this code. The director shall hold a hearing if required by any provision of this code, or upon written demand therefor by a person aggrieved by any act, threatened act of [or] failure of the director to act, or by any report, rule, regulation or order of the director (other than an order for the holding of a hearing, or an order on hearing or pursuant thereto). Any such demand shall specify the grounds to be relied upon as a basis for the relief to be demanded at the hearing, and unless postponed by mutual consent, such hearing shall be held within thirty (30) days after receipt by the director of demand therefor."

The hearing would follow according to the provisions of section 61–1424, 1954 Supp., A.C.A.1939 [A.R.S. § 20–165]:

"(a) In conducting any such hearing the director shall sit as a quasi-judicial officer. Within thirty (30) days after termination of the hearing or of any rehearing thereof or reargument thereon, he shall make his order on hearing, covering matters involved in such hearing and in any rehearing or reargument thereof, and shall give a copy of such order to the same persons given notice of the hearing.

"(b) The order shall contain a concise statement of the facts as found by the director, a concise statement of his conclusions therefrom, and the effective date of the order.

"(c) The order may affirm, modify, or nullify action theretofore taken or

may constitute the taking of new action within the scope of the notice of hearing."

If then, and only then, the aggrieved person is satisfied that the proper result has not been reached with regard to his problem, he may avail himself of the appeal provisions of section 61-1425, 1954 Supp., A.C.A.1939 [A.R.S. § 20-166], under which he is given the right to be heard de novo in the superior court, with right of appeal thereafter from the judgment thereof to this court. Section 61-1425 reads as follows:

"(a) An appeal from the director shall be taken only from an order on hearing or an order refusing a hearing. Any person aggrieved by any such order may, within thirty (30) days after the order has been mailed or delivered to the persons entitled to receive the same, or within thirty (30) days after the director's order denying rehearing or reargument has been so mailed or delivered, appeal from such order on hearing or such order refusing a hearing by petition to the superior court for Maricopa County. A copy of such petition shall also forthwith be served upon the director and other parties in interest, if any, and the director shall thereupon certify and file in such court a transcript of the record of such hearing and a copy of the order appealed from.

"(b) Upon filing of the petition the court shall have full jurisdiction, and shall determine whether such filing shall operate as a stay of the order appealed from.

"(c) The court shall hear the matter de novo, including any intermediate order or matter involving the merits and necessarily affecting the order appealed from, advancing the cause upon its calendar as are other causes to which the state is a party.

"(d) After hearing the appeal the court may affirm, modify, or reverse the order or action of the director in whole or in part, or remand the action to the director for further proceedings in accordance with the court's direction.

\* \* \* \* \* \*

"(f) Appeal may be taken to the Supreme Court from the judgment of the superior court as in other civil cases to which the state is a party. The superior court judgment appealed from shall not be subject to supersedeas, and a stay of the effectiveness of any such judgment may be made only by order of the Supreme Court upon the giving of such security as that court deems proper."

Returning to the matter herein presented, let us examine the outlined procedure with particular attention directed to its instant applicability.

Under the insurance law operative for the year 1954, insurance companies falling within the class of the first five insurance companies above named, whose claims appear in Count I of the complaint, were required to pay a two per cent tax on their net premiums, and insurance companies falling within the class of Sun Life Insurance Company, a benefit stock insurance corporation whose claim is found in Count II of the complaint were exempt from the payment of the tax provided for in subsection (b), section 61–1524, supra. The insurance director, in the enforcement of the law providing for the payment of a two per cent tax against the first five of said companies, undertook to secure the payment of said tax. These companies paid one per cent thereof voluntarily and one per cent under protest under the provisions of section 73–841, A.C.A.1939 [A.R.S. § 42–204].

Acting upon legal advice, the insurance director also attempted to exact a tax of one per cent upon the net premiums of the Sun Life Insurance Company, supra, under a law which did not become operative until January 1, 1955. The latter company paid the one per cent premium tax under protest, also under the provisions of section 73–841, supra. We will discuss the law relating to these companies separately because there is a marked distinction between the legal status of the two groups of insurance companies.

Section 73–841, supra, reads as follows:

"No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided."

Had the first five of these companies above named in Count I of the complaint paid taxes to the county treasurer on real or personal tangible property or an excise tax in lieu of an ad valorem tax for the year 1954 and desired to thereafter contest the state's right to exact the payment of such tax, payment under protest as provided in section 73–841, supra, would have been the proper method of procedure. See State Tax Commission v. Shattuck, 44 Ariz. 379, at page 407, 38 P.2d 631. They would in that case have been required to pay such tax under protest to the county treasurer in the county in which such real

or personal property was located or where such lieu tax was due to be paid. But the above section clearly has no application to the tax levied against them in the instant case.

The legislature has enacted an entirely separate law relating to the governing and to the taxation of insurance companies based upon net premiums collected during the year and which expressly exempts such companies from any and all other forms of taxation whatever except on their real and tangible personal property. In the collection of these taxes based upon their net premiums, it specifically states the procedure to be followed in any instance in which any person is aggrieved by an act or threatened act of the director of insurance who must enforce the payment of their taxes from such insurance companies.

■ The procedure to be followed is exclusive and mandatory in order to vest jurisdiction in the court. Gashette v. Industrial Commission, 80 Ariz. 5, 291 P.2d 783; Meloy v. Saint Paul Mercury Indemnity Co., 72 Ariz. 406, 236 P.2d 732; Duncan v. Superior Court of Pinal County, 65 Ariz. 193, 177 P.2d 374; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41–53, 58 S.Ct. 459, 82 L.Ed. 638, 639; Gorham Manufacturing Co. v. State Tax Commission, 266 U.S. 265, 45 S.Ct. 80, 69 L.Ed. 279. The United States Supreme Court cases above cited expressly hold that where a special procedure is provided with respect to matters handled by an ad-ministrative body, the administrative remedy must be exhausted before resort to the courts may be had. This holding was affirmed in Franklin v. Jonco Air Craft Corp., 346 U.S. 868, 74 S.Ct. 126, 98 L.Ed. 378, and again in Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 374, 75 S.Ct. 845, 99 L.Ed. 1155. We have just held in the case of State of Arizona v. McCarrell, Ariz., 295 P.2d 1086, that a statute relating to quiet-title actions providing upon whom service of process is to be made when the state is a party defendant was controlling as against a general statute providing otherwise in actions generally against the state and that a general statute subsequently enacted did not repeal the special statute relating to the service of process. The general statute here involved subsequently became a rule of court and we held that the special statute relating to quiet-title actions against the state as it applied to the manner of serving process was also procedural and constitutes a rule of court but that the statutory rule of construction applied to rules of court. This is an application in the instant case of the same principle involved in that action.

Surely the controversy over the amount of tax to be paid for the year 1954 and the threatened revocation of their licenses to do business in this state which, according to the provisions of the act, would have been a mandatory obligation of the director had such taxes not been paid, was of a sufficiently important nature that

these companies could have availed themselves of their right under the provisions of sections 61–1420, 61–1424 and 61–1425, supra, to apply for a hearing before the director to determine the correct amount of taxes due from each of them. The director is expressly vested with quasi-judicial power and all other powers reasonably implied from the provisions of the insurance code to enforce its provisions. He was mandated in the act to enforce it including the payment of taxes levied under its provisions. He therefore had the power to determine the amount of the tax under the clear language of the act which provided that the rate of taxation for the year 1954 was two per cent of the net premiums of the insurance company for that year. On the question of the powers of a quasi-judicial officer see State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 P. 636, and State v. Cull, 32 Ariz. 532, at page 543, 260 P. 1023.

These companies, having failed to comply with the statute prescribing the procedure to be followed in such cases, did not by their action invest either the superior court or this court with jurisdiction to hear and determine the issues herein involved. The cause as to them is therefore ordered dismissed and the trial court is directed to set aside its judgment in their favor and to dismiss Count I of said cause of action for want of jurisdiction.

We will now consider the claim of Sun Life Insurance Company, a benefit stock insurance company, as set forth in Count II of the complaint. Under the provisions of the insurance code prior to January 1, 1955, as above related, the law exempted benefit insurance companies and benefit insurance stock corporations from the provisions of the general insurance laws and therefore they were not liable for any tax whatsoever thereunder during the year 1954.

The present Arizona Insurance Code was enacted early in 1954 and approved by the Governor on March 24 of that year. Chapter 64, article 1, section 19 thereof expressly provides that it was to become effective January 1, 1955. There is nothing in the chapter indicating that the provision levying such tax was to be retroactive. On the other hand, by postponing its operative date to January 1, 1955, clearly indicates a legislative intent that such levy was to become operative January 1, 1955. It will be observed that the law itself imposes the levy, leaving nothing to be done either by the company or the insurance director except to compute the amount of the tax and to see that it is paid. We therefore hold that the 1954 law is controlling in the instant case.

The attempted collection by the insurance director of the one per cent tax for that year was without any authority of law.

The court held in the original opinion in Nelssen v. Electrical District No. 4 of Pinal County, 60 Ariz. 145, 132 P.2d 632, 636, where it was attempted to levy a tax in favor of the electrical district upon land

that at no time had ever been a part of said district that:

"We are of the opinion that both on reason and authority, upon the facts appearing in the record, the land of plaintiff was not, and could not have been, legally made a part of the district at the time of its organization, and that no proceedings were taken as permitted by section 75–632, supra, to bring said land within it. Such being the case, plaintiff's land was never a legal part of the district, and the trial court should have enjoined the district and defendants from attempting to levy any further district taxes thereon."

The court then reversed and remanded the case to the lower court with instructions to grant an injunction forbidding the levy of further district taxes upon the land involved in this proceeding until its status is changed as provided by law.

On rehearing in that case found in 60 Ariz. 175, 133 P.2d 1013, we said:

" * * * The asserted right by the district's officers to impose the tax on all such land is not based on any law but is wholly unauthorized by any law. While the language of section 73–841 is very broad and comprehensive, it cannot well be construed as requiring a property owner to pay a claim for taxes, when there is no semblance of authority for its imposition, before he may defend against it."

The land owner had attempted in that case to pay his state and county taxes to the county treasurer of Pinal County but the tender was refused unless he also paid the taxes levied by the electrical district, which had already been assessed against him. On the rehearing the court further said:

"The judgment should be modified to show that appellant's land is not a part of Electrical District No. 4 and is not subject to the asserted lien or any assessment for the payment of any debt or liability of said district. As thus modified, the decision is adhered to."

With respect to ad valorem taxes we have repeatedly held that:

"If there is no semblance of authority for the imposition of the tax, then injunction will lie. If there is some semblance of authority for the imposition of such tax plaintiff's remedy is to pay the tax under protest, then test its validity by suing for recovery of the amount so paid under Section 73–841." Santa Fe Trail T. Co. v. Bowles, 62 Ariz. 177, 156 P.2d 722, 723, and Brush v. State of Arizona, 59 Ariz. 525, 130 P.2d 506.

We think that the electrical district case above clearly indicates that section 73–841, supra, has no application where the tax sought to be collected has no semblance of authority for its imposition.

 The benefit insurance company paid the tax under protest and compulsion, being

304

impliedly threatened with the imposition of a penalty for failure to do so. There being no semblance of authority for the levying of said tax for the year 1954 it was absolutely void, and the exaction of its payment and receipt thereof were without authority and although section 73-841, supra, was not applicable, the plaintiff Sun Insurance Company is in equity and justice entitled to recover said amount from the state treasurer as for money had and received. Stone v. White, 301 U.S. 532-539, 57 S.Ct. 851, 81 L.Ed. 1265.

The judgment in Count II is reversed and remanded with instructions to enter judgment for the plaintiff Sun Life Insurance Company.

LA PRADE, C. J., and WINDES and STRUCKMEYER, JJ., concurring.

UDALL, Justice (dissenting).

I am of the opinion that both the trial court and this court had jurisdiction herein, hence as I view it the appeal as to Count No. I should be determined on its merits and not dismissed for lack of jurisdiction.

In the first place I do not agree that the newly-enacted Arizona Insurance Code, Laws 1954, Ch. 64, Art. 2, Sec. 20, now Section 20-161, A.R.S.1956, requires a formal hearing under the peculiar facts of the instant case, as no "report, rule, regulation or order of the director" is involved. Assuming, arguendo, that I am in error on this premise and that under the law an adminis-

trative hearing would ordinarily be necessary as a preliminary prerequisite to testing the matter in court, still there are certain well-recognized exceptions to the rule relative to "exhausting the administrative remedy", two of which apply in the instant case, viz.:

(1) "* * * where the question in dispute is purely a legal one, and nothing of an administrative nature is to be or can be done; * * *." 73 C.J.S., Public Administrative Bodies and Procedure, § 41, Exceptions to Rule, p. 354; and see, § 173 of the same volume.

(2) "* * * where it plainly appears that the administrative remedy would be of no value and fruitless, the party seeking judicial relief does not have to complete administrative procedure before resorting to the courts, * * *." 42 Am.Jur., Public Administrative Law, section 200, "Limitations on Doctrine".

Stripped to its bare bones this record indubitably shows that the only question presented is which tax law applies, the old or the new. This question demands no exercise of administrative discretion requiring special knowledge or experience in the field of insurance. The director had consulted the attorney general on the matter and defense counsel were informally advised that he was going to be governed by the latter's opinion. It should be noted that there is not the slightest dispute as to the amount

of the total direct premium income collected. It was just a question of what tax rate applied. Only one rate could be legally applicable; ergo, a levy under another rate would be void as a matter of law. Under these circumstances I cannot conceive of a more futile thing than to have asked for a formal hearing before the director to settle the legal question presented. It is obvious the director did not deem a hearing necessary or he would have, on his own motion, directed a hearing to be held, as he is empowered to do under section 20–161, supra.

As to Count I when the majority determined that plaintiffs' failure to comply with the administrative procedure divested both the superior court and this court of jurisdiction to hear and determine the issues herein involved that settled this part of the appeal; hence the pronouncement as to the nonapplicability of section 73–841, supra (now Sec. 42–204, A.R.S.1956) is wholly dictum. If the matter were being determined on its merits, personally I would experience no difficulty in finding a legal basis either under the common law or under the last-mentioned statute for the recovery of taxes paid, as here, under protest, if such were illegally exacted.

As to Count No. II the majority finds no jurisdictional defect in the fact that no administrative remedy was followed, though in truth illegality of the tax levy was the basic issue of both counts. I agree with this result. However, I am of the view that on the record before us this court should not reverse with directions to enter judgment for the plaintiff. This by reason of a procedural difficulty. In the lower court plaintiff moved for a summary judgment and defendant moved to dismiss The court denied the motion for summary judgment and granted the motion to dismiss. A formal written judgment incorporating these rulings was then entered and the plaintiff appealed therefrom. It would seem therefore that if the trial court erred in dismissing Count No. II of the complaint, the proper order to be entered by this court would be to reverse that portion of the judgment with directions to reinstate the complaint and for further proceedings not inconsistent with the majority decision, rather than to direct the entry of judgment forthwith for plaintiff. Were it not for this procedural hiatus I would concur with the end result of permitting Sun Life Insurance Company to recover the taxes illegally exacted of them.

It is for these reasons I register this dissent.