Argued April 5, judgment for defendant April 21, 1965

# STATE OF OREGON ex rel MUSA *v.* MINEAR

401 P. 2d 36

*William B. Murray,* Portland, argued the cause for plaintiff. With him on the brief were Thomas R. Mahoney, Portland, and Gary D. Gortmaker, District Attorney, Salem.

*Cecil H. Quesseth,* Salem, and *Raymond P. Underwood,* Portland, argued the cause for defendant. With them on the brief was Ridgway K. Foley, Jr., Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

The relator brings this proceeding in the nature of quo warranto to challenge the right of Leon P. Minear to hold office as superintendent of public instruction.

The case presents two questions: (1) Is ORS 326.005 (1) (Oregon Laws 1961, ch 624, § 1), under the provisions of which the superintendent holds office, constitutional? (2) If not, does it necessarily follow that the incumbent must vacate the office?

The answer to both questions is "no."

Oregon Constitution, Art VIII, § 1, provides:

"The Governor shall be superintendent of public instruction, and his powers, and duties in that capacity shall be such as may be prescribed by

law; but after the term of five years from the adoption of this Constitution, it shall be competent for the Legislative Assembly to provide by law for the election of a superintendent, to provide for his compensation, and prescribe his powers and duties."

ORS 326.005 (1) provides:

"The State Board of Education shall elect the Superintendent of Public Instruction who shall be the executive head of the State Department of Education and administrative officer of the State Board of Education; provided, the person elected shall have been a resident of Oregon for the five years immediately preceding the date of election."

The predominant theme of the Constitutional Convention of 1857 was economy in government. In earlier years the people of the territory had rejected statehood in part because they considered it thrifty to permit the federal government to provide governmental services. In the formation of the state, frugality prevailed.

The framers of the constitution rejected proposals to create the offices of lieutenant governor and attorney general. The governor was required to perform double duty as governor and superintendent of schools. The secretary of state was required to serve as auditor. The judges of the supreme court were required to serve as trial judges. Other economies, particularly in the matter of salaries, were written into the constitution in order to make it acceptable to the voters. See Carey, The Oregon Constitution (1925), at page 56.

Foreseeing the time when the duties of governor and the responsibilities connected with the management of the public schools might unduly tax the energies of one man, the framers of the constitution made provision for the Legislative Assembly to relieve the

governor of his educational duties at any time after five years from the adoption of the constitution.

The controlling constitutional question in the case at bar is whether, by employing the language found in Article VIII, § 1, the framers intended that the eventual superintendent of public instruction be an elected or an appointed officer.

The relator argues that the words "to provide by law for the election of a superintendent" mean an election by the voters of the state. The superintendent argues that the words mean that the Assembly could, if it saw fit, provide by law for the executive appointment of the superintendent. It was not mandatory that the Assembly ever provide for a separate office. The issue is whether the Assembly was free to make the office appointive rather than elective, if it saw fit to create the office at all.

The superintendent points out that elsewhere in the constitution when the framers spoke of the election of a governor, a secretary of state, or a printer, they employed such words as "by the qualified electors of the State." Article V, § 4; Art VI, § 1; Art XII, § 1 (original). In connection with senators and representatives, the constitution says, "chosen by the electors of the respective counties, or districts   *   *   *." Article IV, § 3 (original). The superintendent argues that if the framers had intended, with reference to the superintendent, that he be elected by the electors of the state they would have said so. The answer to this proposition, however, lies not in the realm of semantics or in rules for construing statutes of doubtful meaning, but rather in the constitution itself and in the proceedings which produced the document.

Before adopting the proposal that for at least five

years the governor must serve as superintendent of public instruction, the convention had before it an alternative proposal that the secretary of state should serve as superintendent for a like period of time. In both cases, the framers had already spelled out in detail their desire to have the governor and the secretary of state elected by the "qualified electors of the State." Article V, § 4; Art VI, § 1. It may have seemed to the framers redundant to include in a section conferring educational duties upon an elected governor additional words stating that his elected successor, when the Assembly should decide that one was needed, also must be elected "by the qualified electors of the State."

If there were any doubt that the framers meant an elected official to be elected by the people rather than by a committee representing the executive, the doubt is resolved by the character of the Constitution of 1857 and the convention that created it. All state officers, including the state printer, were made elective. See Article XII, § 1 (original). The only appointments contemplated were to fill vacancies between elections. Article V, § 16 (original) provides:

"When during a recess of the Legislative Assembly a vacancy shall happen in any office, the appointment to which is vested in the Legislative Assembly; or when, at any time, a vacancy shall have occurred in any other State Office, or in the office of judge of any Court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected, and qualified."

The superintendent argues that the appointment of a professional person by the state board of education pursuant to ORS 326.005 is a more desirable

method of selecting a superintendent than that of a popular vote. This argument may be sound from a political-science viewpoint. The Assembly in 1961 thought the policy was educationally sound. The policy argument, however, begs the constitutional question, which is the question properly before this court.

■ If the word "election" in the constitution means election by the voters, the appointment of the superintendent, or his "election" by the board of education, is not an "election" permitted by the constitution no matter how it may be characterized in ORS 326.005. Strong as the presumption of constitutionality may be, the presumption cannot work in the face of express constitutional direction to the contrary. If the statute is unconstitutional because it does not provide for the election of the officer in the manner contemplated by the framers of the basic document, the fact that the statute may be an otherwise desirable piece of legislation is irrelevant. We hold that ORS 326.005 (1) is unconstitutional because it denies the voters of the state a right preserved to them, wisely or not, in the 1857 constitution.

We come, then, to the question whether the superintendent, having been appointed by the board of education under the provisions of an unconstitutional statute, is necessarily required to vacate his office.

■ If the superintendent were holding office under no other warrant than his appointment by the board under ORS 326.005, there would be a serious question whether he could continue to occupy the office without a new appointment, because his appointment by the board would be at best voidable, if not indeed void. However, the incumbent does not hold office solely by virtue of the board's appointment on June 15, 1961.

Prior to the effective date of ORS 326.005 and prior, of course, to his acceptance of the board's appointment, the incumbent had been appointed by the governor to fill the same office when it became vacant upon the retirement of the former holder thereof.

In 1872, the Assembly for the first time provided for the election of a separate officer:

"§ 1. The office of superintendent of public instruction is hereby detached from the office of governor, and created a distinct and separate office. The superintendent of public instruction shall be, in the first instance, elected by joint ballot of this legislative assembly, and he shall hold his office until his successor is duly elected and qualified.

"§ 2. A superintendent of public instruction shall be elected at the general election of the year eighteen hundred and seventy-four and every four years thereafter, and shall qualify and enter upon the discharge of his duties at the time fixed by law for other state officers * * *." Deady and Lane's General Laws of Oregon 1843-1872, ch IV, p 502 (Oregon Laws 1872, pp 145-146, §§ 1 & 2).

It was under the foregoing statute and its subsequent amendments that the incumbent's predecessors in office were elected by the people and held office until the retirement of Rex Putnam in 1960. On January 6, 1961, the governor appointed the incumbent to fill the unexpired term of the former superintendent, i.e., until January 7, 1963. After January 7, 1963, had come and gone without a duly elected and qualified successor presenting himself for induction into the office of superintendent of public instruction, the incumbent continued in office under the provisions of Oregon Constitution, Art XV, § 1:

"All officers, except members of the Legislative

Assembly, shall hold their offices until their successors are elected, and qualified."

■ The application of the foregoing section to the facts of this case is supported by a number of decisions of this court, the latest of which is *State ex rel Smith v. Tazwell,* 166 Or 349, 111 P2d 1021 (1941). The purpose of the section, as was recently noted in another context, is to avoid vacancies in office. *State ex rel O'Hara v. Appling,* 215 Or 303, 317, 334 P2d 482 (1959).

■■ The declaration of the unconstitutionality of ORS 326.005 (1) (Oregon Laws 1961, ch 624, § 1) automatically reinstates the repealed statute, ORS 326.010 (last enacted in Oregon Laws 1947, ch 253). Under ORS 326.010 as it was before the 1961 act which attempted to repeal it, the office had a four-year term for which the incumbent could have been a candidate in the general elections of 1962. No candidate sought the office in 1962, and accordingly none had been elected or qualified to succeed the incumbent when his term expired on January 7, 1963. In such a situation, the post does not automatically become vacant, but the incumbent remains in office, *locum tenens,* as we have held in similar cases, until he shall be superseded by a person authorized by law to be inducted into the office. *State ex rel Everding v. Simon,* 20 Or 365, 376, 26 P 170 (1891).

It is the judgment of this court that the defendant is entitled to hold the office to which he was appointed by the governor on January 6, 1961.