412 P.2d 731

**SELECTIVE LIFE INSURANCE COMPANY, a corporation, Appellant,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a corporation, Appellee.**

**I CA–CIV 147.**

Court of Appeals of Arizona.

March 31, 1966.

Rehearing Denied April 22, 1966.

Review Granted June 7, 1966.

---

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank, Phoenix, for appellant.

Evans, Kitchel & Jenckes, by Edward C. LeBeau, Phoenix, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellee.

Snell & Wilmer, Phoenix, filed brief amicus curiae on behalf of Life Ins. Ass'n of America.

CAMERON, Judge.

This is an appeal from a judgment of the lower court in favor of the plaintiff-appellee foreclosing a first mortgage on Arizona real property.

We are called upon to answer the following question: Does a certificate from the Director of Insurance alone authorize a foreign insurance corporation to do business as an insurance corporation in the State of Arizona?

The facts necessary for a determination of this matter on appeal are as follows: Plaintiff, Equitable Life Assurance Society of the United States, hereinafter referred to as Equitable, was authorized to write life and disability insurance business by virtue of a Certificate of Authority issued on 1 April, 1963, by George A. Bushnell, Director of Insurance, State of Arizona. Equitable, a New York corporation, was doing business in Arizona on the date the mortgage was executed and on the date it brought suit to foreclose the mortgage. Appellant, Selective Life Insurance Company, hereinafter referred to as Selective, held an inferior mortgage on the same piece of property foreclosed by Equitable, and also had a judgment lien against the subject property.

. It is the contention of Selective that Equitable has not complied with the laws of the State of Arizona, and was not qualified to do business in the State on the date that its mortgage was executed, and that therefore the mortgage is void. (Article 14, Sec. 17, Constitution of Arizona, A.R.S., A.R.S. 10–482, National Union Indemnity Co. v. Bruce Brothers Inc., 44 Ariz. 454, 38 P.2d 648 [1934]). If this contention is correct, Selective's mortgage and judgment lien would be superior to any interest of Equitable. It is admitted that although Equitable has a Certificate of Authority to write life and disability insurance business in the State of Arizona, by the Director of Insurance, Equitable does not have a license from the Corporation Commission to do business as a corporation within the State of Arizona.

A discussion of the background of the laws involved is proper at this time. Prior to 1955, the Department of Insurance was a division of the Arizona Corporation Commission. Article 14, Section 17 of the Arizona Constitution states in part as follows:

"No foreign corporation shall have authority to do business in this State, until it shall have obtained from the Corporation Commission a license to do business in the State, upon such terms as may be prescribed by law. * * *"

Article 15, Section 5 of the Arizona Constitution states as follows:

"The Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this State, and to issue licenses to foreign corporations to do business in this State, as may be prescribed by law."

It should be noted that we are not here concerned with the power of the Corporation Commission to regulate foreign insurance companies as it does public service corporations, for as our Supreme Court has stated:

"Article 15 of the Constitution does not, in terms, confer on the corporation commission power to regulate the business of insurance like it does the business of public service corporations. The commission's power to regulate the insurance business, except to the limited extent indicated in sections 4 and 5 of said article, is statutory, chapter 36, Revised Code of 1928 (section 1773 et seq.), and receives its sanction under the police power of the state. (Citations omitted)." Wylie v. Phoenix Assurance Co. Ltd., 42 Ariz. 133 at 138, 22 P.2d 845 at 847 (1933).

The first Arizona legislature enacted a statute dealing with foreign insurance companies, and specifically authorized the Corporation Commission to issue Certificates of Authority to foreign insurance companies. During the ensuing 30 years as the state grew, so did the responsibility of the Corporation Commission. In 1945, the legislature mentioned for the first time the office of the Director of Insurance, providing that:

"b. The commission shall appoint a director of insurance who shall have supervision under the commission * *." 1945 Session Laws, page 254.

Two years later this statute was amended to read as follows:

"61–301, CORPORATION COMMISSION TO ENFORCE INSURANCE LAWS

"(a) The corporation commission shall administer the laws relating to insurance companies, and shall promulgate rules and regulations for the effective execution of such laws and the protection of the insuring public.

"(b) The commission shall have the sole power to issue certificates of incorporation, certificates of authority and licenses to corporations and organizations to do insurance business, and to impose fines and other penalties as provided by this chapter." 61–301 A.C.A. 1939.

"61–301a, DIRECTOR OF INSURANCE

"a The commission shall appoint a director of insurance who shall have supervision, subject to the authority of the commission, of the administration of laws relating to insurance as prescribed in this chapter and regulations promulgated by the commission pursuant thereto." 61–301a, A.C.A. 1939.

The authority and status of the Director of Insurance remained legislatively unchanged until 1955 when Sections 20–141 and 20–142, Arizona Revised Statutes, were enacted. 20–141 provided there should be a Director of Insurance, appointed by the Commission (Corporation Commission) subject to approval by the State Senate, and that the Commission might remove the Director for cause. The statute also provided that:

"A. The director shall enforce the provisions of, and execute the duties imposed upon him by, this title." 20–142 A.R.S.

Section 20–101, entitled "Commission Defined", states:

"Unless the context otherwise requires, 'commission' means the corporation commission or such other authority as may by law have original jurisdiction over the appointment of the director of insurance." 20–101 A.R.S.

Although the connection with the Corporation Commission was maintained in this legislation, the authority of the Commission over the Director of Insurance was

primarily by way of appointment and also review, in that the Director of Insurance was required to prepare and file a report once a year to the Corporation Commission. The Commission also could remove the Director of Insurance for cause.

. In 1956, the Arizona Supreme Court discussed this statute and made the following statement:

> "In 1954 the old insurance code was repealed and a new one adopted. Under the new code the director is appointed by the corporation commission subject to approval by the senate but he now acts as exclusive head of the department of insurance and is delegated the following duties, (citations omitted) * * *. By section 61-1404, 1954 Supp., A.C.A.1939 A.R.S. § 20-143], he is granted the power to make necessary rules and regulations for effectuating any provision of the insurance code. In effect, the obvious intent of the legislature in the passage of this new insurance code was the creation of a distinct department of insurance, the function of which is that of an administrative body to·control the administration of insurance matters as they relate to the state." Williams v. Bankers National Insurance Company, 80 Ariz. 294, 296, 297, 297 P.2d 344, 346 (1956).

Selective relies heavily on this case and contends that if it should be decided that the statutes created a separate insurance department completely divorced from the Corporation Commission, then Equitable would have to comply not only with the insurance regulations of the Department of Insurance, but under our Constitution, would have to also comply with the requirements of the Corporation Commission in obtaining a permit to do business as a foreign corporation in the State of Arizona.

 Equitable points out that it is not transacting a general corporate business in Arizona, but is merely doing business as an insurance corporation and, as such it is entitled not only to write policies of insurance, but also, as a part of its normal business as an insurance company, it is entitled to make mortgage loans. Metropolitan Life Insurance Company v. Whitstone Management Company, 7 Cir., 77 F.2d 255 (1935), Fidelity Mutual Life Insurance Company v. Sims, 140 W.Va. 49, 82 S.E.2d 312 (1954). Equitable also asserts that a plain reading and comparison of the general corporation law indicates that the legislature had not intended to require double qualification by foreign insurance corporations. Equitable cites 10-481 A.R.S., which reads in part as follows:

> "A. A foreign corporation before entering upon, doing or transacting any business, conducting any enterprise, or engaging in any occupation in this state shall: * * *"
>
> *       *       *       *       *       *
>
> "E. This section shall not apply to insurance corporations, nor to any corporation transacting in this state only the business of lending funds to religious, social or benevolent associations."

We do not feel that the legislature intended that a foreign insurance company licensed to do business by the Director of Insurance should be required to also comply with other provisions of the Corporation Commission for obtaining permits to do business in the State of Arizona. By Section 10-481, Subsection E, A.R.S., the legislature clearly indicated its intent that foreign insurance corporations be regulated only by the Director of Insurance.

It is Selective's position that as long as the Insurance Department was under the Corporation Commission, the Insurance Department could license foreign insurance corporations, and not be in derogation of the constitutional mandate concerning the power of the Corporation Commission to license foreign corporations. Article 14, Section 17; Article 15, Section 5, Arizona Constitution, A.R.S. Selective contends, however, that any attempt by the legislature to take away the power of the Corporation Commission to license foreign

corporations would be unconstitutional. Selective therefore contends that the statute (10–481 A.R.S.) is unconstitutional as taking away from the Corporation Commission the rights given to it by the Constitution of Arizona.

Our Supreme Court has repeatedly pronounced rules pertaining to the constitutionality of acts of the legislature, and the measure of the burden on him who would upset such acts:

> "We are ever alert to the rule of this court that no act of the legislature will be declared unconstitutional unless we are convinced beyond a reasonable doubt that it contravenes the Constitution. State v. Harold, 1952, 74 Ariz. 210, 246 P.2d 178, 180." State ex rel. Morrison v. Nabours, 79 Ariz. 240, 245, 286 P.2d 752, 755 (1955).

And:

> "It is well settled in Arizona that there is a presumption in favor of the constitutionality of a legislative enactment." State of Arizona v. Krug, 96 Ariz. 225 at 228, 393 P.2d 916 at 918 (1964).

We do not feel that the statement made in Williams v. Bankers National Insurance Company, supra, may be construed to negate the control which the Corporation Commission has over the Director of Insurance. It is true that the Insurance Department may be a separate and distinct department, but it is a separate and distinct department within and under the control of the Corporation Commission. The power to appoint and remove is also the power to control, and in the instant case construing the statute in the light most favorable to upholding the constitutionality of said statute, we feel that the Director of Insurance is a part of the Corporation Commission for the purpose of licensing foreign insurance corporations and that therefore the legislature has not unconstitutionally stripped the Corporation Commission of its power over foreign insurance corporations. By the power to appoint and remove for cause, by requiring a written report to be filed by the Director

with the Commission, the Corporation Commission still exercises a control over the actions of the Director of Insurance. We cite with approval the following statement from the United States District Court for the District of Arizona:

> "The only reasonable interpretation of the legislation is that the Legislature, in its wisdom, concluded that a distinct department of Insurance was necessary and intended that such Department should be an administrative branch of the Corporation Commission, with the acts of the Director of Insurance to be viewed as the acts of the Corporation Commission itself. In construing the legislation, I am bound to place thereon a construction such as will accomplish the legislative intent, and, if possible, avoid an absurd conclusion or a construction which would render the statute invalid or unconstitutional. State v. Airesearch Manufacturing Co., 68 Ariz. 342, 206 P.2d 562.

> "* * * I am in complete agreement with defendants' contention that the legislature never intended that the Director of Insurance should be viewed as any thing other than an agent of the Corporation Commission. It follows that the act of the Director of Insurance in issuing a certificate of authority to Massachusetts Bonding to transact business in the State, is, in truth and in fact, the act of the Corporation Commission." Osborne v. Massachusetts Bonding and Insurance Company, 229 F.Supp. 674, 677, U. S. District Court, District of Arizona (1964).

The judgment of the lower court is affirmed.

DONOFRIO, J., and THOMAS TANG, Superior Court Judge, concur.

NOTE: Chief Judge Henry S. Stevens having requested that he be relieved from consideration of this matter, Judge Thomas Tang was called to sit in his stead and participate in the determination of this decision.