422 P.2d 710

**SELECTIVE LIFE INSURANCE COMPA-
NY, a corporation, Appellant,**

v.

**The EQUITABLE LIFE ASSURANCE SO-
CIETY OF the UNITED STATES,
a corporation, Appellee.**

No. 8782–PR.

Supreme Court of Arizona.

In Banc.

Jan. 19, 1967.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank, Jeremy E. Butler, Phoenix, for appellant.

Evans, Kitchel & Jenckes, by Edward C. LeBeau, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellee.

Snell & Wilmer, by Edward Jacobson, Phoenix, for amicus curiae, Life Ins. Ass'n of America.

McFARLAND, Vice Chief Justice:

Selective Life Insurance Company, herein referred to as Selective, was the defendant in the trial court and the appellant in the Arizona Court of Appeals. Selective has asked and been granted review of the decision of the Arizona Court of Appeals in the case of Selective Life Insurance Company v. Equitable Life Assurance Society of the United States, 3 Ariz.App. 162, 412 P.2d 731.

Selective's appeal arose from a summary judgment rendered by the trial court against Selective and in favor of The Equitable

Life Assurance Society of the United States, hereinafter referred to as Equitable.

The facts of the case are as follows: On May 8, 1964, both Selective and Equitable held mortgages on property owned by James J. Fain and Jeannine Y. Fain. Equitable brought an action to foreclose its mortgage, asking inter alia that its mortgage be declared a valid first mortgage and superior to that of Selective. Selective answered and defended on the ground that Equitable was not qualified to do business in the State of Arizona on the date its mortgage was executed, and that as a result Equitable's mortgage was void; therefore, Selective's mortgage and judgment lien would be superior to any interest of Equitable.

Equitable is a foreign corporation incorporated in the State of New York, and on appeal admits it was doing business in Arizona, and that it was not licensed under the general corporation law, A.R.S. § 10–481. However, Equitable was authorized to transact a life and disability insurance business under a certificate of authority issued on April 1, 1963, by George A. Bushnell, Director of Insurance, State of Arizona.

The trial court, finding no genuine issue as to any material fact, granted summary judgment in favor of Equitable, declaring Equitable's mortgage to be valid and superior to that of Selective. On appeal, the Arizona Court of Appeals affirmed the judgment of the lower court.

The question presented, as seen by this court, is: Does a certificate of authority to transact a life and disability insurance business issued by the director of insurance on April 1, 1963, authorize a foreign insurance corporation to make valid mortgage investment contracts in the State of Arizona?

To determine the answer to this question, we must first examine the constitutional provisions relating to the licensing of foreign corporations. Article 14, Section 17, of the Arizona Constitution, A.R.S., states:

" * * * No foreign corporation shall have authority to do business in this State, until it shall have obtained from the Corporation Commission a license to do business in the State, upon such terms as may be prescribed by law. * * *" A.R.S.Const. Art. 14, § 17.

Article 14, Section 8, provides:

"No domestic or foreign corporation shall do any business in this State without having filed its articles of incorporation or a certified copy thereof with the Corporation Commission, * * *" A. R.S.Const. Art. 14, § 8.

Article 15, Section 5, provides:

"The Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this State, and to issue licenses to foreign corporations to do business in this State, as may be prescribed by law." A.R.S.Const. Art. 15, § 5.

■ The foregoing provisions are mandatory under Article 2, Section 32, of the Arizona Constitution.[1] However, those provisions relating to issuance of licenses to do business are not self-executing, as the terms and procedure under which the corporation commission will operate are left to be prescribed by law. Miller v. Wilson, 59 Ariz. 403, 129 P.2d 668.

The legislature has enacted a statute— A.R.S. § 10–481—setting forth the procedure to be followed by a foreign corporation in order to receive a license to do business in this state. The foreign corporation acting under this statute must, among other things, file a copy of its articles of incorporation with the corporation commission, appoint a statutory agent, and pay

1. A.R.S. Const. Art. 2, § 32, provides:
"The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."

certain fees. A.R.S. § 10–481, Subsection E, provides, however:

> "This section shall not apply to insurance corporations, nor to any corporation transacting in this state only the business of lending funds to religious, social or benevolent associations." A.R.S. § 10–481, Subsection E.

A.R.S. § 10–482 makes it clear that A.R.S. § 10–481 is to be the controlling statute in determining the validity of acts of foreign corporations doing business in this state, inasmuch as it provides that:

> "No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void." A.R.S. § 10–482.

■ The legislature, having excluded foreign insurance corporations from the applicability of A.R.S. § 10–481, has provided for the regulation of foreign insurance companies under the Arizona insurance code, A.R.S. §§ 20–101 to 20–1616. The insurance code requires that foreign insurance companies comply not only with requirements equal to those set forth in A.R.S. § 10–481, but imposes additional requisites not found in the general corporation statutes. See A.R.S. §§ 20–215 and 20–167. All insurance companies, foreign and domestic, are subject to regulation under the insurance code, and no insurer shall transact insurance business in this state except under authority granted by the director of insurance. A.R.S. §§ 20–107, 20–206.

Equitable contends that the certificate of authority which it holds from the director of insurance, and which it renews annually, is the constitutionally required license from the corporation commission. This contention is based on several statutory provisions, which are as follows:

> "§ 20–141. Director of insurance; appointment; term; qualifications; salary
>
> "A. There shall be a director of insurance who, subject to subsection E of this section, shall be appointed by the commission, subject to approval by the state senate.
>
> "B. The term of the director shall be six years, but he may be removed by the commission for cause.
>
> \*   \*   \*   \*   \*   \*
>
> "E. The individual holding the office of director of insurance immediately prior to January 1, 1955, as such office was constituted prior to January 1, 1955, shall be the director of insurance until expiration of the term for which last so appointed prior to January 1, 1955, but such individual shall be subject to earlier removal for cause by the commission and shall likewise be eligible for reappointment by the commission at expiration of such term.
>
> \*   \*   \*   \*   \*   \*
>
> "§ 20–154. Annual report
>
> "A. As early in the calendar year as possible the director shall annually prepare a report for delivery to the commission, the governor and the legislature \* \* \*."

Equitable argues that these statutes provide sufficient agency contacts, so that, when viewed in the light of the strong presumption of constitutionality of a legislative enactment, the act of the director of insurance must be considered to be the act of the corporation commission; thereby obviating the necessity for double qualification of foreign insurance corporations. Equitable cites the recent case of Osborne v. Massachusetts Bonding and Insurance Company, 229 F.Supp. 674 (D.Ariz.1964), wherein it was said:

> "\* \* \* I am in complete agreement with defendants' contention that the legislature never intended that the Director of Insurance should be viewed as anything other than an agent of the Corporation Commission. It follows that the act of the Director of Insurance in issuing a certificate of authority to Massachusetts Bonding to transact business in the State, is, in truth and in fact, the act of the Corporation Commission. \* \* \*" 229 F.Supp. at 677.

**598**

There is no doubt but that under the law of Arizona prior to the adoption of the insurance code in 1954, the director of insurance was acting on behalf of the corporation commission, as the 1947 enactment, A.C.A. 61–301a (Ariz.Sess.Laws 1947, Chap. 125), specifically states:

"The commission shall appoint a director of insurance who shall have supervision, *subject to the authority of the commission,* of the administration of laws relating to insurance as prescribed in this chapter and regulations promulgated by the commission pursuant thereto." 61–301a, A.C.A.1939 [Emphasis added.]

When the new insurance code was enacted, this provision was omitted, and the corporation commission was left only the power of appointment, subject to approval of the senate, and the power to remove for cause. In a previous discussion of the legislative history of the insurance code, in Williams, v. Bankers National Insurance Company, 80 Ariz. 294, 297 P.2d 344, we said:

"In 1954 the old insurance code was repealed and a new one adopted. Under the new code the director is appointed by the corporation commission subject to approval by the senate but he now acts as exclusive head of the department of insurance, * * *

* * * * * *

"By section 61–1404, 1954 Supp., A.C.A. 1939 [A.R.S. § 20–143], he is granted the power to make necessary rules and regulations for effectuating any provision of the insurance code. In effect, the obvious intent of the legislature in the passage of this new insurance code was the creation of a distinct department of insurance, the function of which is that of an administrative body to control the administration of insurance matters as they relate to the state." 80 Ariz. at 296, 297 P.2d at 346.

■ The conclusion reached by this court that the legislature, by omitting the statutory provisions relating to control and supervision by the corporation commission, meant to omit the control and supervision itself, thereby creating a separate and distinct department of insurance is founded on well-established principles of statutory construction. The courts have a duty to give effect to an amendment or omission in a subsequent statute. Finch v. State Department of Public Welfare, 80 Ariz. 226, 295 P.2d 846.

■ This court is cognizant of the rule that statutes should be construed in such a manner as to preserve their constitutionality, if possible. Maricopa · County v. Douglas, 69 Ariz. 35, 208 P.2d 646. However, in doing so, we are bound to uphold the Arizona Constitution, and the spirit and purpose of that instrument may not be defeated. Miller v. Heller, 68 Ariz. 352, 206 P.2d 569; State ex rel. Morrison v. Nabours, 79 Ariz. 240, 286 P.2d 752.

This court has on many occasions recognized the unique nature of the constitutional grant of power to the Arizona Corporation Commission. Statements made as early as 1914, in the case of State v. Tucson Gas, Electric Light and Power Co., 15 Ariz. 294, 138 P. 781, are as follows:

"Article 15 of our Constitution is unique in that no other state has given its Commission, by whatever name called, so extensive power and jurisdiction. * * *.

* * * * * *

" * * * This 'sole power' of life over domestic corporations, and 'sole power' to qualify foreign corporations to do business in this state, given to our Commission, are not to be found in the Constitution of any other state.

* * * * * *

" * * * While it is not so named, it is, in fact, another department of government, with powers and duties as well defined as any branch of the government, and where it is given exclusive power it is supreme. Its exclusive field may not be invaded by either the courts, the legislative, or executive.

* * * * * *

"As above said, no other state in the Union has placed such extraordinary

power in its Corporation Commission, but that is no reason for rejecting or repudiating, by construction or otherwise, the power and authority given this body by our Constitution. It is to be remembered that the framers, and the people who adopted it, designed that our Constitution abandon the beaten path of precedents in Constitution-making, and handle modern problems and conditions by advanced and up-to-date methods and formulas. * * *" 15 Ariz. at 300, 304, 306, and 307, 138 P. at 783, 785, and 786.

In the above-quoted case, this court found that the legislation was an attempt to usurp the corporation commission's constitutional power of regulation of utility rates, and for this reason was declared unconstitutional.

■■ The framers of the Arizona Constitution—by giving the corporation commission "sole power" to license foreign corporations—clearly intended that this act was to be under the administrative, regulatory, and judicial powers of the commission, and subject only to its control.

■■ The mere power to appoint and remove for cause does not constitute the director of insurance the "agent" of the corporation commission. Agency requires that the agent act on the principal's behalf and subject to his control. Valley Nat. Bank of Phoenix v. Milmoe, 74 Ariz. 290, 248 P.2d 740. Under the present insurance code, a certificate of authority is effectively issued only from the department of insurance, and the recipient is not subject to the rule-making or judicial power of the corporation commission; nor may the commission review the actions of the director of insurance unless they be of such magnitude as to be cause for removal.

The legislature intended there was to be a distinct department of insurance. Williams v. Bankers National Insurance Company, supra. As it is inconceivable that it was intended that foreign insurance corporations not do business in Arizona at all, the necessity for a "license to do business in this State" required by the Arizona Constitution must have been deemed satisfied by the issuance of a certificate of authority from the office of the director of insurance. Prior to the amendment in 1954 the director of insurance, in the performance of these duties, was under the direct supervision and control of the corporation commission. Williams v. Bankers National Insurance Company, supra. His acts were therefore the acts of the corporation commission, while, under the 1954 act, his acts do not come under the supervision and control of the commission. As a result thereof the legislative vesting of the power to perform these duties independently in the director of insurance is an attempt to take away power which has been vested in the corporation commission by the constitution.

■■ The insurance code has a severability clause, intended to preserve the validity of those sections remaining unaffected by a constitutional conflict rendering other and separate sections of the statute invalid. The courts will generally give effect to such clauses whenever possible. Velazquez v. Hunter, 10 Cir., 159 F.2d 606, cert. denied 330 U.S. 846, 67 S.Ct. 1084, 91 L.Ed. 1291. In addition, it is well settled in this state that where the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act. McCune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537; State v. Coursey, 71 Ariz. 227, 225 P.2d 713; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658; Pinal County v. Lewis, 22 Ariz. 128, 194 P. 1101; Gherna v. State, 16 Ariz. 344, 146 P. 494.

■■ The intent of the legislature must be considered in determining the effect on other parts of a statute when a portion of it conflicts with the constitution of our state. Determination of the intent of the legislature is our primary consideration, and.

takes precedence over other rules of statutory construction. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410.

The insurance code, A.R.S. §§ 20–101 to 20–1616, is a comprehensive enactment, providing in detail for the regulation and control of insurance companies and the insurance business in general. It is manifest that the cardinal purpose of the act is to provide these regulations together with an effective means of enforcement and administration. The provisions relating to appointment and powers of the director are but a means to that end, and are not the inducement for the act, nor (inasmuch as the appointment and powers of the director were adequately provided for in the prior statutes) would the legislature have failed to enact the one without the other.

The new insurance code has retained the delegation of power to license foreign insurance corporations in the office of the director of insurance, but has, by provisions of A.R.S. § 20–141, Subsection A, supra, and by the provision repealing A.C.A. § 61–301a, supra, attempted to remove the supervisory control of the corporation commission. However, it is this power of supervision and unrestricted appointment which preserve the constitutionality of the intended acts.

The Arizona Constitution also provides that "[t]he Corporation Commission, and the several members thereof, shall have power to inspect and investigate the property, books, papers, business, methods, and affairs of any corporation whose stock shall be offered for sale to the public * *" and that the commission shall have certain judicial powers in this respect. A.R.S. Const. Art. 15, § 4.

The director of insurance has been given similar powers in regard to insurance corporations. A.R.S. §§ 20–142, Subsection C, 20–156, Subsections A and B, and 20–160. Although domestic stock and mutual insurers are subject to the general corporations law, foreign stock and mutual insurers are exempt from this requirement. A.R.S. §§ 20–701, 20–704. Also, the Securities Act of Arizona excludes policies of foreign insurers from its operation and from the exercise of the corporation commission's powers under that act.

The effect of the removal of supervision by the corporation commission, embodied in the new insurance code, is to reduce the commission's constitutionally vested investigatory powers in those areas in which the director of insurance acts alone.

The legislature may enlarge the powers and extend the duties of the corporation commission, but may not decrease its powers. Garvey v. Trew, 64 Ariz. 342, 170 P.2d 845, cert. denied 329 U.S. 784, 67 S.Ct. 297, 91 L.Ed. 673; Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321; Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973. The Arizona Constitution has entrusted the corporation commission with a certain minimum of power, and the legislature may not detract from this power by placing it in itself as in State v. Tucson Gas, Electric Light and Power Co., supra, or as in the instant case by removing the commission's control over an agency exercising a substantial part of that power.

The powers of the director of insurance, as set forth under the act of 1954, are so entwined with his duties in regard to other matters in the statute that it is impossible to separate them. It is the independent nature of the office itself which presents the constitutional impediment. Therefore, that part of the act providing for the appointment of a director of insurance is unconstitutional. The question then is what effect this has upon the constitutionality of the remaining portions of the statute under the separability clause. Also, whether that portion of the act repealing the former statute providing for an appointment of a director of insurance who acted under the supervision and control of the corporation commission is affected by the unconstitutional portion of the act. These questions are interrelated, as the law is such that determination of the latter question will resolve the former. The law is clear in regard to this matter. If the legislature

would not have repealed the section of the statute providing for the appointment of a director of insurance under the supervision and control of the corporation commission had it known this act setting up a new insurance commissioner to be unconstitutional, then the repeal clause of that portion of the act must also fall. The general rule in this regard is well stated in the case of Vennckolt v. Lutey, 96 Mont. 72, 28 P.2d 452, as follows:

> " * * * 'Where a repeal of a prior law is inserted in an Act in order to secure the unobstructed operation of the Act, and the repealing law is itself held to be void, the provisions for the repeal of the prior law will fall with it, and will not be operative in the repeal of the prior law, unless the language of the repealing clause is such as to leave no doubt as to its intention to repeal a former law, in any event. Where, however, it is not clear that the Legislature, by a repealing clause attached to an unconstitutional act, intended to repeal a former statute upon the same subject, except on the supposition that the new Act would take the place of the former one, the repealing clause falls with the Act of which it is a part. A repealing clause in a statute of which a portion is unconstitutional is applicable only to laws inconsistent with the operative provisions of the Act.' * * *" 96 Mont. at 79, 28 P.2d at 454, 455.

■ Where the clause containing the repeal is incidental to the rest of the statute, and the latter is invalid, the clause containing the repeal will likewise be deemed invalid, leaving the prior law in full force and effect. Faubus v. Kinney, 239 Ark. 443, 389 S.W.2d 887; State ex rel. Heck's Discount Centers, Inc. v. Winters, 147 W.Va. 861, 132 S.E.2d 374; Missouri Ins. Co. v. Morris, Mo., 255 S.W.2d 781; State ex rel. Musa v. Minear, 240 Or. 315, 401 P.2d 36; Standard v. Sadler, Tex., 383 S.W.2d 391; McMinn County Board of Education v. Anderson, 200 Tenn. 333, 292 S.W.2d 198; Sutherland, Statutory Construction, 3rd ed., vol. 1, Sec. 2033; Field, The Effect of an Unconstitutional Statute, 283–288; 16 Am.Jur.2d, Constitutional Law, § 185; 82 C.J.S. Statutes § 281; 102 A.L. R. 802.

■ In the instant case, the clause providing for the appointment of the director of insurance (A.R.S. § 20–141, Subsection A) is invalid as an unwarranted encroachment upon the corporation commission's necessary power over the acts required to be done by that office. Intimately tied to this invalid clause is the section of the act repealing its predecessor, A.C.A. § 61–301a. Therefore, in order to protect the purpose of the act in providing a means of regulation of foreign and domestic insurers, the repeal of A.C.A. § 61–301a must fall, along with its invalid counterpart, A.R.S. § 20–141, Subsection A.

We therefore hold A.C.A. § 61–301a to be in full force and effect, and the control and supervision of the licensing of foreign insurers is subject to the authority of the corporation commission.

■ The question then presented is what effect this has on the remaining portions of the statute. It is clear that it was the intent of the legislature in the enactment of the act of 1954 to set up regulations for insurance companies to do business in the state. This the legislature had a right to do, so long as such regulations do not conflict with the constitutional powers of the corporation commission. There is no constitutional question presented in the instant case as to other provisions of the insurance code which would require their invalidation.

■ The final question to be answered is what effect does the unconstitutionality of this portion of the code have upon the acts of the director made since its enactment and prior to this decision—or more specifically, may Equitable rely upon its certificate of authority issued while the director was in effect acting without supervision of the corporation commission as required by the constitution?

That the acts of the director were under an unconstitutional statute does not necessarily mean that the mortgage issued by Equitable is void. Arizona has rejected the doctrine that acts performed under an unconstitutional statute must always be invalid. In the case of Texas Co. v. State, 31 Ariz. 485, 254 P. 1060; 53 A.L.R. 258, we said:

" '* * * *Until the subsequent statute was declared to be unconstitutional by competent authority, the defendants, under every idea of justice and under our theory of government, had a right to presume that the lawmaking power had acted within the bounds of the Constitution, and their highest duty was to obey.'* (Italics ours.)" 31 Ariz. at 501, 254 P. at 1065 (quoting from State v. Godwin et al., 123 N.C. 697, 31 S.E. 221).

In the same case it was also said:

"* * * What we do say is that it would be the height of injustice for the state to penalize, either by criminal process or civil action, one of its citizens for obeying a law which on its face was adopted in a constitutional manner, but which was, after such obedience by the citizen, held to be unconstitutional. And therefore, * * * we hold that in Arizona the citizen who obeys such a law cannot be penalized by the state for so doing." 31 Ariz. at 502, 254 P. at 1065.

In discussing Texas Co. v. State, supra, in a later decision—Austin v. Campbell, 91 Ariz. 195, 370 P.2d 769—we stated:

"The reasons for adhering to the view that citizens are entitled to rely upon an enactment of the legislature until repealed or declared unconstitutional are as cogent today as in 1927 when the Texas Co. case was decided. However desirable the total nullity doctrine of Norton [Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178] may be from the standpoint of symmetrical jurisprudence it does not conform to reality. For a statute, until legislatively or judicially excised, is an operative fact which cannot be ignored. This court presumes every legislative act constitutional and indulges in every intendment in favor of its validity. Hudson v. Kelly, 76 Ariz. 255, 259, 263 P.2d 362, 364 (1953). No penalties should be visited upon the citizenry for doing likewise." 91 Ariz. at 203, 370 P.2d at 775.

Equitable had a right to rely on the acts of the director, and was justified in its failure to comply with A.R.S. § 10-481, as § 10-481, Subsection E, excluded its application. Equitable should not be penalized for obeying, in good faith, the procedure heretofore prescribed by the legislature. Accordingly, we hold Equitable's mortgage to be valid.

For the foregoing reasons, the opinion of the Arizona Court of Appeals is vacated, and the judgment of the superior court affirmed.

BERNSTEIN, C. J., and UDALL, STRUCKMEYER and LOCKWOOD, JJ., concur.